IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HINDALCO INDUSTRIES LIMITED, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Court No. 24-00234 |
| THE UNITED STATES | ) ) |
| Defendant. | ) ) |

COMPLAINT

Hindalco Industries Limited ("Hindalco" or "Plaintiff"), by its counsel, states the following claims against the Defendant, the United States.

I.     **JURISDICTIONAL STATEMENT**

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1516a).

2.     This action contests the *Final Results* issued by the U.S. Department of Commerce ("Department" or "Commerce") in the second administrative review ("AR2") of the countervailing duty ("CVD") order on Common Alloy Aluminum Sheet ("CAAS") from India (Case No. C-533-896) for the period January 1, 2022, through December 31, 2022 (the "period of review" or "POR"). *See Common Alloy Aluminum Sheet From India: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 89598 (Dep't of Commerce November 13, 2024) ("*Final Results*"). The Department's analysis of issues raised in the *Final Results* is contained in, *inter alia*, the memoranda entitled: "Issues and Decision Memorandum

for the Final Results of the Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India; 2022," issued on November 5, 2024 ("Final Decision Memo"); "Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India: Final Results Calculations for Hindalco Industries Limited," issued on November 5, 2024 ("Final Hindalco Calc Memo"); "Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India; 2022," issued on April 26, 2024 ("Prelim Decision Memo"); and "Countervailing Duty Administrative Review of Common Alloy Aluminum Sheet from India: Preliminary Results Calculations for Hindalco Industries Limited," issued on April 26, 2024 ("Prelim Hindalco Calc Memo").

## II. STANDING OF PLAINTIFF

3. Plaintiff is an Indian producer and exporter of the subject merchandise. Therefore, Plaintiff is an interested party as defined in 19 U.S.C. § 1677(9)(A).

4. Plaintiff participated in the administrative review that is the subject of this action as a mandatory respondent, and, accordingly, has standing under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d) to bring this action.

## III. TIMELINESS OF THIS ACTION

5. Plaintiff commenced this action by filing a summons on December 13, 2024, which was within 30 days after the date of publication of the *Final Results*.

6. Plaintiff is filing this Complaint on January 10, 2025, which is within 30 days after the date of the filing of the summons. Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A).

**IV.    STATEMENT OF THE FACTS**

7.     On June 12, 2023, the Department initiated AR2 of the CVD order on CAAS from India, identifying four Indian producers/exporters of subject merchandise for which timely requests for an administrative review of the applicable CVD order had been submitted. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 38021 (Dep't of Commerce June 12, 2023). Plaintiff was among the four identified Indian producers/exporters of subject merchandise. As noted above, the POR for AR2 was January 1, 2022, through December 31, 2022.

8.     On July 11, 2023, the Department issued its initial questionnaire to the Government of India ("GOI") and Plaintiff. From August 2023 through May 2024, the GOI and Plaintiff supplied the Department with information in response to the Department's initial and supplemental questionnaires, as well as other requests and opportunities to submit information.

9.     On May 2, 2024, the Department published *Common Alloy Aluminum Sheet From India: Preliminary Results and Partial Rescission of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 35788 (Dep't of Commerce May 2, 2024) ("*Preliminary Results*"). In its *Preliminary Results*, the Department calculated a preliminary countervailable subsidy rate for products produced and/or exported by Hindalco[1] of 54.12 percent for 2022. *See Preliminary Results*, 89 Fed. Reg. at 35789, and accompanying Prelim Decision Memo and Prelim Hindalco Calc Memo.

10.    The Department based its preliminary countervailable subsidy rate for Hindalco in large part on its conclusions regarding the alleged provision of coal for less than adequate

---

[1]    The Department also found the following companies to be cross-owned with Hindalco: Minerals & Minerals Limited ("MML") and Utkal Alumina International Limited ("Utkal"). *See Preliminary Results*, 89 Fed. Reg. at 35789 n.13; Prelim Decision Memo at 6-7. References to Hindalco, therefore, also include these companies.

4

remuneration ("LTAR") by the GOI through Coal India Limited and/or its affiliates and subsidiaries (collectively, "CIL"). The alleged provision of coal for LTAR contributed 43.47 percent to Hindalco's preliminary subsidy rate for 2022. *See* Prelim Hindalco Calc Memo at Attachment I.

11.     In regard to the alleged provision of coal for LTAR, of particular relevance to this Complaint, first, the Department concluded that this alleged program was specific to Hindalco based on "predominant use{}" pursuant to Section 771(5A)(D)(iii)(II) of the Act (19 U.S.C. § 1677(5A)(D)(iii)(II)). The Department reached this conclusion on the basis that the "electricity power industry is a predominant user of the subsidy," equating the "electricity power industry" with CIL's "power (utility) and power (captive) sectors" based on the belief that "it {is} appropriate to group these industries" "{b}ecause the power (utility) and power (captive) sectors … are sufficiently similar in process and output due to their purchase of coal for power generation …." Prelim Decision Memo at 32-33.

12.     Second, the Department calculated the benefit to Hindalco from the alleged provision of coal for LTAR by using a tier two coal price benchmark based exclusively on UN COMTRADE coal export price data supplied by Petitioners. *See* Prelim Decision Memo at 11-12, 33; Prelim Hindalco Calc Memo at 2-3. The Department disregarded coal price benchmark information from India Coal Market Watch ("ICMW") and McCloskey Thermal Coal Research ("McCloskey") supplied by Hindalco. *See* Prelim Decision Memo at 11-12.

13.     The Department also based its preliminary countervailable subsidy rate for Hindalco in significant part on its conclusions regarding the alleged provision of bauxite mining rights for LTAR. The alleged provision of bauxite mining rights for LTAR contributed 7.18

percent to Hindalco's preliminary subsidy rate for 2022.  *See* Prelim Hindalco Calc Memo at Attachment I.

14.     In regard to the alleged provision of bauxite mining rights for LTAR, of particular relevance to this Complaint, first, the Department concluded that this alleged program was specific to Hindalco based on "predominant use{}" pursuant to Section 771(5A)(D)(iii)(II) of the Act (19 U.S.C. § 1677(5A)(D)(iii)(II)).  The Department reached this conclusion on the basis that "because all mining rights for bauxite in India are controlled by the GOI and, only through holding mining rights would a company have the means to operate a bauxite mine, the provision of bauxite mining rights are *de facto* specific to mining rights holders as predominant users …." Prelim Decision Memo at 35.

15.     Second, the Department calculated the benefit to Hindalco from the alleged provision of bauxite mining rights for LTAR by using a tier two bauxite price benchmark based on UN COMTRADE data for 2022 monthly world export prices for aluminum ores and concentrates supplied by Petitioners, after concluding there are no usable tier one benchmarks on record.  *See* Prelim Decision Memo at 13-15, 36; Prelim Hindalco Calc Memo at 4-5.

16.     On June 10, 2024, Plaintiff submitted its administrative case brief.  Plaintiff argued, *inter alia*, that the Department erred in its *Preliminary Results* in its analyses of the alleged provision of coal for LTAR and alleged provision of bauxite mining rights for LTAR, including with respect to the Department's specificity and benefit determinations for both of these alleged programs.

17.     On November 13, 2024, the Department published its *Final Results*, in which it calculated a final countervailable subsidy rate for products produced and/or exported by

Hindalco[2] of 41.46 percent for 2022.  *See Final Results*, 89 Fed. Reg. at 89598, and accompanying Final Decision Memo and Final Hindalco Calc Memo.  With regard to the alleged provision of coal for LTAR, the Department made no changes relative to its *Preliminary Results* in its specificity determination or its coal price benchmark; however, due to a change in its ocean freight benchmark, the alleged provision of coal for LTAR contributed 33.23 percent to Hindalco's final subsidy rate for 2022.  *See* Final Decision Memo at 5, 18-24 (Comment 2 explaining the Department's position on the specificity of the alleged provision of coal for LTAR), 26-32 (Comment 3 explaining the Department's position on the coal price benchmark), 48-49 (Comment 9 explaining the Department's position on the ocean freight benchmark); Final Hindalco Calc Memo at 2-4 and Attachment I.  With regard to the alleged provision of bauxite mining rights for LTAR, the Department made no change relative to its *Preliminary Results* in its specificity determination; however, the Department changed to a tier one bauxite price benchmark based on Hindalco's bauxite import data (but disregarding data on Hindalco's domestic bauxite purchases) and added a profit rate in its benefit calculation, as a result of which the alleged provision of bauxite mining rights for LTAR contributed 4.76 percent to Hindalco's final subsidy rate for 2022.  *See* Final Decision Memo at 6, 39-41 (Comment 5 explaining the Department's position on the specificity of the alleged provision of bauxite mining rights for LTAR), 43-45 (Comment 6 explaining the Department's position on the bauxite price benchmark), 46-47 (Comment 8 explaining the Department's position on the profit rate); Final Hindalco Calc Memo at 2-3 and Attachment I.

---

[2]   The Department continued to find MML and Utkal to be cross-owned with Hindalco. *See Final Results*, 89 Fed. Reg. at 89598 n.9.

V.  **STATEMENT OF CLAIMS**

**Count 1:   The Department's Conclusion that the Alleged Provision of Coal for LTAR Is Specific to Hindalco Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

18.  Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 17.

19.  Under the statute, for a subsidy program to be countervailable, it must be specific under 19 U.S.C. § 1677(5A).  *See* 19 U.S.C. § 1677(5).  If the law enacting the subsidy program does not expressly limit the program to an enterprise or industry resulting in *de jure* specificity under 19 U.S.C. § 1677(5A)(D)(i), then the Department will assess whether the subsidy program is *de facto* specific based on the four factors of 19 U.S.C. § 1677(5A)(D)(iii).[3]  Pursuant to 19 C.F.R. § 351.502(a), the Department conducts its *de facto* specificity analysis by considering the four factors of 19 U.S.C. § 1677(5A)(D)(iii) sequentially, and does not undertake further analysis once a single factor warrants a finding of specificity.  Moreover, 19 U.S.C. § 1677(5A)(D) provides that for purpose of 19 U.S.C. § 1677(5A), "any reference to an enterprise or industry … includes a group of such enterprises or industries."  In practice, when the Department finds an alleged subsidy program to be specific based on "predominant use{}" by an industry or group of industries pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(II), it does not find that subsidy program to be specific (and thus countervailable) to *other* industries.

20.  In both the *Preliminary Results* and *Final Results*, the Department found that the alleged provision of coal for LTAR by the GOI through CIL was *de facto* specific to Hindalco based on the "predominant use{}" factor at 19 U.S.C. § 1677(5A)(D)(iii)(II).  *See* Preliminary

---

[3]  These four factors are: "(I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number{;} (II) An enterprise or industry is a predominant user of the subsidy{;} (III) An enterprise or industry receives a disproportionately large amount of the subsidy{;} (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others."

8

Decision Memo at 32-33; Final Decision Memo at 18-24.  The Department reasoned that "it {is} appropriate to group" CIL's "power (utility) and power (captive) sectors" into the "electricity power industry" "{b}ecause the power (utility) and power (captive) sectors … are sufficiently similar in process and output due to their purchase of coal for power generation …."  Prelim Decision Memo at 32-33; *see also* Final Decision Memo at 20-23 (again concluding that CIL's "power (utility)" and "power (captive)" classifications are a "group of industries" that "buy coal to generate electricity" and therefore "comprise a group of industries that is the predominant user of this subsidy program").

21.     However, the Department erred in its *Preliminary Results* and *Final Results* by finding CIL's "power (utility)" and "power (captive)" classifications to be a "group of industries" for purpose of 19 U.S.C. § 1677(5A).  Among other things, the Department's view that these two classifications share "similar{ity} in process and output" ignored substantial record evidence indicating that while companies falling within CIL's "power (utility)" classification output electricity, companies falling within CIL's "power (captive)" classification (such as Hindalco) do not output electricity; rather CIL's "power (captive)" classification comprises *numerous different manufacturing industries with various kinds of manufacturing output*, so there is no justification to consider CIL's "power (utility)" and "power (captive)" classifications to be a "group of industries" for purpose of the *de facto* specificity analysis.

22.     Without such grouping, the record indicates CIL's "power (utility)" classification reflects the electricity industry in India that is by far the single predominant user of CIL's coal.  As such, because Hindalco falls within CIL's "power (captive)" and "others (non-coking)" classifications, not CIL's "power (utility)" classification, the record provides no basis to

9

conclude that Hindalco was a member of an industry or group of industries that was a predominant user of the alleged provision of coal for LTAR.

23. Alternatively, even if the Department's reasoning that coal supplied to CIL's "power (utility)" and "power (captive)" classifications should be considered specific (and thus countervailable) pursuant to the "predominant use{}" factor at 19 U.S.C. § 1677(5A)(D)(iii)(II) were correct, the Department erred in separately concluding that the coal supplied by CIL to Hindalco's facilities that fall under CIL's "others (non-coking)" classification was specific (and thus countervailable). *See* Final Decision Memo at 23.

24. For these among other reasons, the Department's conclusion in its *Preliminary Results* and *Final Results* that the alleged provision of coal for LTAR is specific to Hindalco (and thus countervailable) is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 2:    The Department's Calculation of the Benefit to Hindalco from the Alleged Provision of Coal for LTAR Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

25. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 17.

26. To calculate the benefit from a provision of goods or services for LTAR, the Department utilizes a benchmark pursuant to the three-tier hierarchy established by the Department's regulations at 19 C.F.R. § 351.511(a)(2). Where a "tier one" benchmark cannot be used (*i.e.*, actual in-country prices), then a "tier two" benchmark will be used based on world market prices. *See* 19 C.F.R. § 351.511(a)(2)(i)-(ii). Importantly, the regulations explain that the Department will "consider product similarity … and other factors affecting comparability," and "mak{e} due allowance for factors affecting comparability" when selecting the appropriate benchmark for assessing the adequacy of remuneration. 19 C.F.R. § 351.511(a)(2)(i)-(ii). This approach is consistent with the statute requiring the adequacy of remuneration to be determined

"in relation to prevailing market conditions," including "quality" and "other conditions of purchase or sale." 19 U.S.C. § 1677(5)(E)(iv).  Pursuant to these provisions, the Department's practice is to construct grade-specific benchmarks when grade-specific benchmark data are available and the record shows that the respondent purchases the good at issue on a grade-specific basis.

27. In calculating the benefit to Hindalco from the alleged provision of coal for LTAR in the *Preliminary Results* and *Final Results*, for the coal price benchmark, under "tier two" of its hierarchy, the Department relied on the broad-based UN COMTRADE coal export price data under Harmonized System ("HS") subheadings 270112 and 270119 provided by Petitioners rather than the grade-specific ICMW and McCloskey coal export price data provided by Hindalco.  *See* Prelim Decision Memo at 11-12, 33; Prelim Hindalco Calc Memo at 2-3; Final Decision Memo at 26-32; Final Hindalco Calc Memo at 2.

28. However, the Department erred by using Petitioner's UN COMTRADE data and rejecting Hindalco's ICMW and McCloskey data for the coal price benchmark.  The record shows Hindalco purchases non-coking coal from CIL on a grade-specific basis, and the ICMW and McCloskey coal price data are grade-specific while the UN COMTRADE coal price data are not.  Therefore, the Department should have used the ICMW and McCloskey data for constructing its coal price benchmark, by extrapolating (from the available ICMW and McCloskey data) benchmark coal prices for the particular grades of non-coking coal purchased by Hindalco.  Alternatively, the Department should have used the ICMW and McCloskey data to adjust the UN COMTRADE data to make due allowances for factors affecting the comparability of different coal grades.  By completely rejecting the grade-specific ICMW and McCloskey data, the Department failed to account for "product similarity" and "factors affecting comparability,"

11

such as "quality" and "other conditions of purchase or sale," as the statute and the Department's regulations require, and as the record allowed. Instead, the Department's use of the broad-based UN COMTRADE data resulted in an artificially inflated coal price benchmark relative to the prices of the lower grades of non-coking coal actually purchased by Hindalco.

29. The Department offers various reasons for rejecting the ICMW and McCloskey benchmark data (*e.g.*, insufficient source and methodology information, limited country coverage, lack of underlying quantity and value data, not being specific to the grades of non-coking coal purchased by Hindalco), *see* Final Decision Memo at 26-32 and Final Hindalco Calc Memo at 2, but none are justified or overcome the statutory and regulatory requirement for a comparable benchmark. Rejection of benchmark data is appropriate only where there is a complete absence of methodological information, or where a source omits basic descriptive information that makes the data impossible to understand. The ICMW and McCloskey benchmark data offered by Hindalco are commercially available, contain sufficient information on source and methodology so as to be reliable, and provide usable grade-specific non-coking coal prices from the world market. The Department routinely uses similar benchmark data in similar circumstances, and will extrapolate from such data to create benchmarks as Hindalco proposed in the underlying review. The Department, therefore, had no basis to reject the ICMW and McCloskey benchmark data.

30. In addition, the Department's reasoning for using the UN COMTRADE data under HS subheadings 270112 and 270119 for its coal price benchmark – *i.e.*, that these subheadings align better with the grades of non-coking coal purchased by Hindalco because they are not basket categories "given that non-coking coal is the only merchandise reported under them," Final Decision Memo at 32 – is plainly erroneous and inexplicable. This is because in the

*very next sentence* following this statement, the Department itself quotes evidence from the GOI's *Coal Directory* indicating that 8-digit code 27011910 (*i.e.*, a code under HS subheading 270119) is "{f}or *Coking coal*," Final Decision Memo at 32 (emphasis added), which by definition is not non-coking coal and not a type of coal purchased by Hindalco. Then, the Department also writes, "{t}here is nothing on the record indicating that either of the two HS subheadings of {UN COMTRADE} data include only prices for non-coking coal," directly contradicting its previous statement that "non-coking coal is the only merchandise reported under" these two HS subheadings. Final Decision Memo at 32. Thus, the record, including the Department's own Final Decision Memo, indicates that the UN COMTRADE data under HS subheadings 270112 and 270119 are indeed for basket categories of coal, including coking coal that Hindalco does not purchase, and therefore not justified for constructing a coal price benchmark in this case.

31. For these among other reasons, the Department's calculation of the benefit to Hindalco from the alleged provision of coal for LTAR in its *Preliminary Results* and *Final Results* is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 3:     The Department's Conclusion that the Alleged Provision of Bauxite Mining Rights for LTAR Is Specific to Hindalco Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

32. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 17.

33. As explained in paragraph 19 above, a countervailable subsidy program must be either *de jure* specific under 19 U.S.C. § 1677(5A)(D)(i) or *de facto* specific based on the four factors of 19 U.S.C. § 1677(5A)(D)(iii), which pursuant to 19 C.F.R. § 351.502(a) the Department considers sequentially. In practice, when the Department finds an alleged subsidy program to be specific based on "predominant use{}" by an industry or group of industries

pursuant to 19 U.S.C. § 1677(5A)(D)(iii)(II), it does not find that subsidy program to be specific (and thus countervailable) to *other* industries.

34. In its *Preliminary Results* and *Final Results*, the Department correctly concluded the alleged provision of bauxite mining rights for LTAR is not *de jure* specific because no law limits this alleged program to any enterprise or industry; however, the Department erred in concluding this alleged program is *de facto* specific to bauxite "mining rights holders," which the Department equated with bauxite "producers," as predominant users under 19 U.S.C. § 1677(5A)(D)(iii)(II). Prelim Decision Memo at 35; Final Decision Memo at 39-41 (also noting that Hindalco and its cross-owned affiliates are predominant users of this alleged program by being among the top ten producers of bauxite in India).

35. The Department erred in its "predominant user" analysis under 19 U.S.C. § 1677(5A)(D)(iii)(II) because the GOI does not administer any program known as the "provision of bauxite mining rights" under any separate governing legislation or regulations; rather, the underlying legislation in question is the Mines and Minerals (Development and Regulation) Act of 1957, as amended ("MMDR Act"), which regulates a wide variety of minerals, not only bauxite. As such, to the extent there is any GOI program at issue, it is the provision of *mineral* mining rights, not bauxite mining rights, and the "predominant user" analysis under 19 U.S.C. § 1677(5A)(D)(iii)(II) must be conducted in this context. In this case, the record indicates that neither Hindalco as an enterprise nor any industry in which Hindalco may be considered to operate is a predominant user of the mineral mining rights provided by the GOI under the MMDR Act, and therefore this alleged program should not be considered *de facto* specific to Hindalco.

36. For these among other reasons, the Department's conclusion in its *Preliminary Results* and *Final Results* that the alleged provision of bauxite mining rights for LTAR is specific to Hindalco (and thus countervailable) is not supported by substantial evidence and is not otherwise in accordance with law.

**Count 4:   The Department's Calculation of the Benefit to Hindalco from the Alleged Provision of Bauxite Mining Rights for LTAR Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law**

37. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 17.

38. As discussed in paragraph 26 above, to calculate the benefit from a provision of goods or services for LTAR, the Department utilizes the three-tier hierarchy under 19 C.F.R. § 351.511(a)(2) to identify the market benchmark. In relevant part, under "tier one", the Department prefers actual in-country prices for its benchmark, and resorts to world market prices under "tier two" if there are no usable "tier one" prices. *See* 19 C.F.R. § 351.511(a)(2)(i)-(ii).

39. While in its *Preliminary Results* the Department utilized a tier two bauxite price benchmark to calculate the benefit to Hindalco from the alleged provision of bauxite mining rights for LTAR, *see* Prelim Decision Memo at 13-15, 36 and Prelim Hindalco Calc Memo at 4-5, in its *Final Results* the Department correctly changed course and utilized a tier one bauxite price benchmark. *See* Final Decision Memo at 43-45 and Final Hindalco Calc Memo at 2-3. However, in doing so, the Department utilized only the price data on the record pertaining to Hindalco's imports of bauxite from unaffiliated suppliers, and disregarded the price data on the record pertaining to Hindalco's domestic purchases of bauxite from unaffiliated suppliers. *See* Final Decision Memo at 44-45 and Final Hindalco Calc Memo at 2-3.

40. The Department erred in its *Final Results* in disregarding the price data on the record pertaining to Hindalco's domestic purchases of bauxite from unaffiliated suppliers when constructing its tier one bauxite price benchmark. To disregard domestic bauxite prices in the

15

tier one benchmark, the Department was required to find that the Indian market for *bauxite* itself (as opposed to *bauxite mining rights*) was distorted by the GOI's involvement. However, the *Final Results* are devoid of any such finding. Rather, in the *Final Results*, the Department found it "inappropriate to use … Hindalco's domestic bauxite purchases as a tier one benchmark" only "{b}ecause the GOI controls all *mining rights* in India and provides them through auction …." Final Decision Memo at 44 (emphasis added). In doing so, the Department lost sight of the fact that the bauxite mining rights market is distinct from the bauxite market, and any distortion resulting from the GOI's involvement in the former does not automatically translate to the latter. Without a reasoned explanation with reference to facts on the record as to why the Indian bauxite market was distorted, independent of the GOI's involvement in the Indian bauxite mining rights market, the Department's disregarding of Hindalco's domestic bauxite purchases when constructing its tier one bauxite price benchmark constituted legal error.

41. For these among other reasons, the Department's calculation of the benefit to Hindalco from the alleged provision of bauxite mining rights for LTAR in its *Final Results* is not supported by substantial evidence and is not otherwise in accordance with law.

**PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1)  Sustaining its complaint herein;

(2)  Holding that the Department's determination is not supported by substantial evidence on the record and is otherwise not in accordance with law;

(3)  Remanding this administrative review to the Department with instructions to:

    (A)  determine that the alleged provision of coal for LTAR is not specific to Hindalco (or alternatively, not specific to Hindalco's facilities under CIL's "others (non-coking)" classification), and therefore not countervailable;

    (B)  if the Department continues to find the alleged provision of coal for LTAR to be specific, then re-calculate the benefit to Hindalco from this alleged program by utilizing the coal price benchmark data from ICMW and McCloskey provided by Hindalco, either exclusively to construct the tier two coal price benchmark or alternatively to adjust the UN COMTRADE data to make due allowances for factors affecting the comparability of different grades of coal;

    (C)  determine that the alleged provision of bauxite mining rights for LTAR is not specific to Hindalco, and therefore not countervailable; and

    (D)  if the Department continues to find the alleged provision of bauxite mining rights for LTAR to be specific, then re-calculate the benefit to Hindalco from this alleged program by utilizing price data on both

        Hindalco's domestic and imported bauxite purchases from unaffiliated suppliers to construct its tier one bauxite price benchmark.

(4)    Awarding such other and further relief as this Court may deem appropriate.

        Respectfully submitted,

        */s/ Rajib Pal*

        Rajib Pal
        Shawn M. Higgins

        Sidley Austin LLP
        1501 K Street N.W.
        Washington, D.C. 20005
        (202) 736-8000

        Counsel to Hindalco Industries Limited

        January 10, 2025